JANE ZENDMAN, Plaintiff, *v.* HARRY WINSTON, INC., Defendant.

Supreme Court, Special Term, New York County, December 15, 1949.

*Herbert D. Cohen* for plaintiff.

*Leon Finley* and *David S. Meyer* for defendant.

RABIN, J. Plaintiff has brought an action for a judgment declaring the right to ownership and possession of a diamond ring. Defendant has counterclaimed in replevin demanding possession of the ring or payment of its alleged value of $11,000, together with interest and damages. Since the issue in both actions was the same, there was no necessity for a declaratory judgment and, therefore, the court at the trial dismissed that action without costs, thus leaving for disposition in the replevin action the question as to which of the parties is the owner and accordingly entitled to possession of the ring, which when decided will determine all of the issues between the parties.

Plaintiff purchased the ring in question from Brand, Inc., at its auction rooms on the boardwalk at Atlantic City, New Jersey, on November 28, 1947, for the sum of $12,500. In the receipt acknowledging payment for the ring, Brand agreed that if for any reason plaintiff did not desire to keep the ring, it would resell the ring, clearly, for her account. On the following day plaintiff returned the ring to Brand who agreed to resell it by December 4, 1947, for no less than $12,500. This fact is of no importance, however, since on January 5, 1948, Brand returned the ring to plaintiff with the explanation that it had been unable to sell it. Since that time the ring has remained in plaintiff's possession.

On February 2, 1948, the attorney for defendant Winston demanded that plaintiff turn the ring over to Winston, asserting that title to the ring was still with Winston and that Brand had no authority to sell it to plaintiff. Prior to this demand, however, Brand had gone into bankruptcy without having remitted the proceeds on the sale of the ring to Winston.

The basis of defendant's claim of ownership is that the ring was placed by Winston with Brand on a memorandum which

provided that Brand received possession only for examination and selection and that the ring remained the property of Winston, to be returned on demand.

In determining the question of title and the right to possession of the ring, plaintiff contends that the New Jersey law and statutes must govern. Defendant argues that plaintiff may not avail herself of any New Jersey statute, not having complied with section 391 of the Civil Practice Act. While the court undoubtedly may take judicial notice of the New Jersey statute (Civ. Prac. Act, § 344-a), the question need not be discussed, for I am of the opinion that the result of this law suit must be the same whether determined under the New Jersey law or the New York law.

Subdivision 1 of section 29 of chapter 30 of title 46 of the New Jersey Statutes Annotated, (§ 46:30–29) provides: "1. Subject to the provisions of this chapter, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.*" (Emphasis supplied.) Section 104 of the New York Personal Property Law contains an identical provision.

The case therefore presents a clear question of fact for the trial court as to whether on all the evidence in the case the conduct of the defendant Winston was such as to preclude it from denying the seller's authority to sell.

While there is some discrepancy in the testimony of defendant's witnesses creating doubt as to the shipping of the ring with the memorandum and it also appears that the memorandum was not signed by Brand, the court finds as a fact that the ring was placed in Brand's possession pursuant to a memorandum which by its terms provided that the ring remained the property of Winston and was given to Brand only for examination and selection.

Under this memorandum then, title to the ring would remain in defendant and Brand could give plaintiff no better title to the ring than it itself had, unless, as the statute provides, *"the owner of the goods is by his conduct precluded from denying the seller's authority to sell."*

The uncontroverted evidence shows that the ring came into the possession of Brand on October 22, 1947. From that date

until November 28, 1947, when it was purchased by plaintiff, it was either in the showcase or window of Brand's auction rooms except at night when it was placed in a safe. In other words, during that entire period Brand, without any objection on the part of defendant, was openly displaying and offering the ring for sale to the public. Defendant had full knowledge of this situation, since during that period defendant's secretary Raticoff visited Brand's place of business on several different occasions and saw the ring on display. Raticoff also saw the ring at Brand's between November 29, 1947, and January 5, 1948, when Brand returned it to plaintiff.

While the memorandum states that Brand had the ring for examination and "selection", nevertheless the fact is that defendant permitted Brand to keep it on display, thus inviting the public to purchase it. Plaintiff purchased the ring on November 28, 1947, at public auction, without any notice of the fact that it had been delivered to Brand under a memorandum, and without any notice or warning that Brand was not authorized to sell the ring. Can it be said that a person desiring to purchase an article at public auction, which he sees openly displayed and offered for sale, must first inquire and examine into the title to the article and the authority of the seller before making a purchase? If such were the law then no purchase " over the counter " would ever be safe and the buyer would always purchase with the risk of a defect in the seller's title. It would seem that the provision of the statute precluding an owner from denying the seller's authority because of his conduct, was intended to protect an innocent purchaser under circumstances such as are presented by the evidence before us.

Defendant attempts to charge plaintiff with knowledge that Brand did not have title by her admission that she heard Brand say that this ring was " part of the Ford estate ". This statement was no warning to plaintiff that Brand was unauthorized to sell. On the contrary, it was a definite indication and assertion of Brand's authority to sell. Whether Brand received authority from the Ford estate or from defendant is of no consequence since Brand was clothed with the indicia of authority to sell.

There is no question as to plaintiff's good faith in purchasing this ring. She was entirely innocent of any wrongdoing and purchased the ring relying upon Brand's apparent ownership and without any knowledge of lack of ownership or authority

to sell on the part of Brand. Defendant by its conduct put it in the power of Brand to perpetrate the fraud. As between two innocent victims of the fraud the one who made possible the fraud must suffer.

On all the evidence in this case I am constrained to hold and I find as a fact that defendant's conduct was such as to preclude it from denying the authority of Brand to sell the ring to plaintiff.

If this transaction be considered as one governed solely by New York law, plaintiff must likewise succeed in view of section 43 of the Personal Property Law (Factors' Act), which provides, insofar as pertinent: " * * * and every such factor or agent not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise for the purpose of sale, or as a security for any advances to be made or obtained thereon, *shall be deemed to be the true owner thereof,* so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise * * *." (Emphasis supplied.)

While the memorandum pursuant to which the ring was given by Winston to Brand stated that it was for examination and " selection " only and that title remained in Winston, the evidence shows that there was a clear intention that Brand keep the ring in its possession *for the purpose of sale.* That is the only possible inference that can be drawn from the facts. The fact that Winston permitted Brand for a long period of time to openly display the ring, thus offering it to the public for sale, can lead to no other conclusion. It is clear from the evidence that the sole object of both Brand and Winston in dealing with this ring was to bring about a sale to a third party. The transaction is one clearly within the provisions of section 43.

Judgment is granted in favor of plaintiff in the replevin action. Settle decision and judgment.